UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMILLIA W., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 23 CV 2955 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Camillia W. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion for summary judgment [15]¹ is granted, defendant's motion for summary judgment [19] is denied, and the decision denying the application for benefits is remanded to the agency for further administrative proceedings. 42 U.S.C. § 405(g).

**Background**

On November 29, 2020, plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging a disability onset date of November 11, 2020 in both applications. [12-1] 14. Plaintiff's claims were denied initially on April 21, 2021, and upon reconsideration on November 23, 2021. [*Id.*] Plaintiff requested a hearing, which was held on June 17, 2022 before an administrative law judge (ALJ). [*Id.*] 14, 36–64. On July 26, 2022, the ALJ issued an unfavorable decision finding plaintiff not disabled from November 11, 2020, the alleged onset date, through the date of the ALJ's decision. [*Id.*] 14–30.

In the July 26, 2022 decision, the ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step, sequential evaluation process. *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023); 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 11, 2020. At step two, the ALJ found that plaintiff has the following severe impairments: obesity, post-traumatic stress disorder (PTSD), healed

---

¹ Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [12], which refer to the page numbers in the bottom right corner of each page.

fracture of lumbar spine and liver laceration from a gunshot wound. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following exceptions: frequent climbing of ramps and stairs; no ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, and crouching; occasional crawling; simple work-related decisions; and occasional changes. She needs a break of 1–2 minutes an hour, while remaining at the workstation, to refocus. At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, including price marker, sales attendant, and routing clerk. Accordingly, the ALJ found that plaintiff was not under a disability from November 11, 2020 through July 26, 2022.

The Appeals Council denied review on March 10, 2023, [12-1] 1, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[2]

## Legal Standard

The Court reviews the ALJ's decision deferentially to "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). Substantial evidence is "not a high threshold: it means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). But where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Dallas H. v. O'Malley*, No. 22 C 50432, 2024 WL 1158378, at *3 (N.D. Ill. Mar. 18, 2024) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## Discussion

Plaintiff argues that the ALJ erred in two ways: (1) failed to account for plaintiff's need to use the restroom frequently and (2) failed to properly evaluate

---

[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [8].

plaintiff's alleged limitations in sitting and standing and plaintiff's need to lie down. [15] 3–11. Plaintiff first highlights her hearing testimony that she needed to use the restroom every 20 to 30 minutes due to damage from her gunshot wound and argues that the ALJ did not meaningfully address this alleged need. [15] 3 (citing [12-1] 43). Plaintiff identifies three points in the record documenting plaintiff's need to frequently use the restroom that the ALJ did not discuss. [15] 4 (citing [12-1] 516, 729, 734). And plaintiff argues that although hearing counsel was unable to identify these records on the spot when asked by the ALJ, Social Security proceedings are non-adversarial and the ALJ had a duty to independently review the record. [*Id.*] (citing *Dorothy C. v. Kijakazi*, No. 21-cv-1278, 2022 WL 2440040, at *3 n.3 (N.D. Ill. July 5, 2022); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)). Plaintiff asserts that the ALJ's decision fell short of the requirements of SSR 96-8p and SSR 16-3p. [*Id.*] 5.

The ALJ's decision only mentioned plaintiff's alleged bathroom issues twice. In summarizing plaintiff's hearing testimony, the ALJ acknowledged that plaintiff "testified she uses the bathroom every 20 to 30 minutes[.]" [12-1] 22. At the end of this paragraph, the ALJ then stated that plaintiff "has issues with using the bathroom, but when asked, her counsel could not cite any mention of this in the medical record." [*Id.*] This comment refers to the following exchange between the ALJ, plaintiff, and plaintiff's counsel at the hearing:

> CLMT: And I also have to use the restroom about six times, seven times a night. So, yeah.
>
> ALJ: Counsel, I just want to ask you about that. I didn't see that in the record. Is there a note of the issues with the washroom in the medical file?
>
> ATTY: I didn't see anything specifically about the frequency of use, but based on the locations of the gunshot wounds, you know, I think there was damage to her ureter and, I believe, her liver, one of her kidneys maybe. So there – it was definitely in that abdominal area. So I do think it's consistent with what happened.
>
> ALJ: Ms. [W.], did you tell your doctor about the issues with needing to use the washroom a lot?
>
> CLMT: Yes. And I got – I had a catheter for a month and a half after I'd been released from the hospital. And I went to a specialist to get it taken out, and I told them about – they told me myself that I was going to have issues with the restroom, but I didn't know it was that severe. They said it was going to wear off after a while, but it hasn't.

3

[*Id.*] 52–53. *See also* [*id.*] 57 (plaintiff's testimony that she uses adult undergarments every time she goes somewhere "because sometimes [she] can't make it to the bathroom fast enough and [she does] urinate on" herself"). Although the ALJ did not explicitly state so, because the ALJ did not include any restrictions in the RFC connected to plaintiff's bathroom use, the ALJ presumably concluded that plaintiff's assertions were not supported by the record and that plaintiff did not require additional restroom breaks during a work day. The ALJ's limited references to this issue and lack of any analysis or explanation was insufficient and requires remand.[3]

The medical record supports plaintiff's testimony that she had a catheter and a ureter stent for six weeks following her injury. *See, e.g.*, [12-1] 352, 361, 387. As a result of plaintiff's gunshot wounds, plaintiff suffered a "right sided ureteral injury Grade II" and had a "R ureter repair over stent, foley in place" until she was able to see a urologist for removal. [12-1] 337, 343–45, 349, 498, 509. *See also* [*id.*] 350 (summarizing the operation report and stating "posterior wall defect at roughly the midpoint of the ureter with less than 50% circumferential involvement was observed" but noting "no bladder involvement in" gunshot wound). More specifically, findings from the time of the injury noted the following: "The left kidney and ureter is normal. There is slight hydronephrosis of the right kidney. There is dilatation of the ureter. There is a mild amount of fluid surrounding the ureter in the mid abdomen. This is adjacent to a stab wound. . . . Urinary bladder: Unremarkable as visualized." [*Id.*] 512. *See also* [*id.*] 514 (referring to "a likely laceration of the right-sided ureter"). As plaintiff points out, there were also minimal references in the record to plaintiff's alleged bathroom issues and frequency. A treatment note from January 27, 2021 states that "patient has difficulty controlling bladder since injury." [*Id.*] 516. A review of plaintiff's symptoms during a February 9, 2022 appointment notes a positive urinary issue. [*Id.*] 729. And a progress note from plaintiff's therapist on July 8, 2022 referred to plaintiff's reports of "deficits that have negatively impacted her day-to-day life," including "forcible and frequent visits to the restroom (urination)[.]" [*Id.*] 734. The ALJ's decision did not include discussion or even acknowledgment of any of these records, with the exception of the last point. In assessing the opinions of plaintiff's therapist, the ALJ noted that the therapist's July 2022 narrative summary opined that plaintiff "needs to use a washroom frequently," but the ALJ found the therapist's opinions unpersuasive and did not specifically discuss plaintiff's complaint of frequent urination. [*Id.*] 27 (citing [*id.*] 734).

The Court is not opining that the ALJ should have concluded that plaintiff did require frequent bathroom breaks and incorporated such limitations in the RFC. After all, the record also contains notations of system reviews that were negative for

---

[3] "[A] summary is not a substitute for analysis." *Charlnette R. v. Dudek*, No. 23-cv-03184, 2025 WL 933840, at *5 (N.D. Ill. Mar. 27, 2025) (quoting *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *3 (N.D. Ill. Mar. 29, 2024)). *See Rebecca M. B. v. Kijakazi*, No. 22 C 41, 2023 WL 3168894, at *4 (N.D. Ill. Apr. 28, 2023); *Shirley A. J. v. O'Malley*, No. 23-cv-113, 2024 WL 1341077, at *5 (N.D. Ind. Mar. 29, 2024).

genitourinary issues and a note that plaintiff denied bowel/bladder changes. *See, e.g.*, [12-1] 511 (noting "no dysuria, urinary frequency or incontinence"), 548, 578, 679, 687. Nor is it the role of this Court to evaluate the facts, weigh evidence, resolve debatable evidentiary conflicts, or determine credibility. *Chavez*, 96 F.4th at 1021; *Gedatus*, 994 F.3d at 900; *Stephens*, 888 F.3d at 327. And an "ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). But ALJs are still required to construct an "accurate and logical bridge" and must "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell*, 97 F.4th at 1054 (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)).[4] The Court does not believe that the ALJ's decision in this case has met that low standard, as the ALJ's decision failed to fully consider plaintiff's complaints of urinary issues and need for frequent bathroom breaks, as well as failed to explicitly explain why the ALJ found that such limitations were unnecessary or unsupported by the record. *Lisa G. v. Kijakazi*, No. 20 C 6962, 2022 WL 2704056, at *3 (July 12, 2022). Despite being "subject to only the most minimal of articulation requirements," *Warnell*, 97 F.4th at 1053, "an ALJ may not ignore an entire line of evidence contrary to its ruling." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citing *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020)). *See A.H. ex rel. Williams v. Astrue*, No. 09 C 6981, 2011 WL 1935830, at *18 (N.D. Ill. May 18, 2011) (stating that an "ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required") (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Given that the ALJ's decision omitted any discussion of plaintiff's alleged urinary issues and need for frequent bathroom breaks—beyond faulting plaintiff's attorney for failing to point to specific records at the hearing—remand is required. *See, e.g.*, *Stanley R. v. Saul*, No. 20-cv-1192, 2021 WL 2550540 at *4 (N.D. Ill. June 22, 2021) ("On remand the ALJ should take care to more fully develop the record to determine whether and, if so, how the specific frequency and duration of Plaintiff's bowel movements would interfere with his ability to work."); *Manker v. Berryhill*, No. 16 C 10704, 2017 WL 6569719 at *4 (N.D. Ill. Dec. 22, 2017) ("[T]he ALJ's failure to determine the frequency and duration of Claimant's required bathroom breaks and the practical workday limitations resulting therefrom is an error requiring remand.").

Defendant asserts that "plaintiff never alleged significant bathroom use prior to the June 2021 [sic] hearing" and that "[w]hen plaintiff applied for disability benefits and completed a Function Report in March 2021, she did not reference a need

---

[4] *See also Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) ("The ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate her analysis so that we can follow her reasoning."); *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Joseph M. v. Kijakazi*, No. 23 C 0088, 2023 WL 7167523, at *4 (N.D. Ill. Oct. 31, 2023) ("The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion.").

to frequently use the restroom." [20] 3. But this is not entirely true. As the ALJ's decision mentioned (without discussing it again),[5] plaintiff's December 2020 disability report "alleged she was unable to work due to PTSD, lumbar spine fracture, damaged colon, *damaged uterea* [sic], and spasms." [12-1] 21, 239 (emphasis added). And the record confirms that plaintiff's gunshot wounds resulted in right sided ureteral injury. *See, e.g.*, [*id.*] 343, 498, 509. Defendant also argues that additional restroom breaks were not required and were not substantiated by the evidence, asserting that plaintiff "relies exclusively on her own testimony for the foundation of these claims with minimal objective support." [20] 2. It is true that "an ALJ need only include limitations that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). But "an ALJ may not discount a claimant's symptom statements 'solely because they are not substantiated by objective evidence.'" *House v. Berryhill*, No. 17 C 3936, 2018 WL 3022678, at *3 (N.D. Ill. June 18, 2018) (quoting SSR 16-3p). And defendant's argument overlooks the primary issue: the ALJ failed to include any discussion of plaintiff's alleged need to urinate frequently or any analysis of the related record evidence, and the Court is accordingly unable to trace the ALJ's reasoning or confirm that the ALJ reviewed the entire record.[6] Much of defendant's brief borders on improperly providing post hoc rationalizations and explanations for the ALJ's decision, as the ALJ did not make such observations or include any such reasoning. *Wayne K. v. Kijakazi*, No. 21-cv-50286, 2022 WL 4329425, at *4 (N.D. Ill. Sept. 19, 2022); *Joshua J. H. v. Kijakazi*, No. 21 C 837, 2022 WL 2905673, at *5 (N.D. Ill. July 22, 2022) (citing *Lothridge v. Saul*, 984 F.3d 1227, 1234–35 (7th Cir. 2021); *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)). For example, defendant asserts that "[a]s the ALJ properly reasoned, no medical source credited these allegations and found such a need, and the evidence did not stack up to support such a frequency." [20] 2 (citing [12-1] 21–22). The ALJ's decision included no such reasoning. Defendant also argues that "[e]xaminations and symptom reviews frequently tested negative for gastrointestinal or related issues" and that "[n]o opining doctor found such a limitation." [20] 3. *See also* [*id.*] 5 (referring to "the ALJ's observation of a record filled with no urinary complaints despite ample opportunity to do so and negative gastrointestinal findings and symptoms"). Again, the ALJ's

---

[5] For example, when the ALJ referenced plaintiff's gunshot wound and the resulting injuries, the ALJ only noted plaintiff's "fractured lumbar spine and liver laceration." *See, e.g.*, [12-1] 22.

[6] It is for this reason that defendant's case citations are also unpersuasive. [20] 3. The ALJs in those cases specifically addressed the claimants' allegations and discussed the relevant record evidence. *See Sherman v. O'Malley*, No. 23-1428, 2023 WL 8868065, at *2 (7th Cir. Dec. 22, 2023) (noting that the ALJ had "acknowledged other evidence of the condition" and that the evidence the ALJ did not address "was of the same nature as the evidence she mentioned"); *Lisa C. v. Kijakazi*, No. 20-cv-5173, 2023 WL 3436400, at *9 (N.D. Ill. May 12, 2023) (finding no error where the ALJ explicitly considered the records "and determined they 'fail[ed] to substantiate the allegations of disabling systems'"); *Tina W. v. Saul*, No. 19 CV 50244, 2021 WL 510315, at *2–3 (N.D. Ill. Feb. 10, 2021) (summarizing the ALJ's reasoning and stating that the ALJ noted certain discrepancies between plaintiff's testimony and specific medical records). By contrast, the ALJ in the instant case merely acknowledged plaintiff's testimony and noted plaintiff's attorney failed to cite specific records at the hearing without making any explicit conclusions as to plaintiff's allegations and without any indication that the ALJ herself considered the record in its entirety.

decision does not contain any of these observations or such discussions of the record evidence.

The Court also cannot find that the ALJ's error is harmless. Courts "will not remand a case to the ALJ for further specification where . . . convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (citation omitted). "An error is harmless if, upon examination of the record, the court can 'predict with great confidence what the result of remand will be.'" *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)). Here, the vocational expert (VE) testified at the hearing that a break of "one to two minutes per hour is not going to impact the numbers" of available jobs in the national economy that plaintiff could perform. [12-1] 60. The VE testified that additional time off-task beyond that, however, would be work-preclusive: "[W]hat is expected for employees is to maintain an hourly productivity . . . at least 89% of the hour. So anything above that . . . if a person is off-task anywhere form [sic] 11% of time – or 10% of time or more on a consistent basis, and they would likely be terminated for reduced or lack of productivity." [*Id.*] 63. Given the VE's testimony, plaintiff's assertions that she has to use the restroom every 20 to 30 minutes, and the ALJ's failure to provide any discussion or analysis of the record evidence, the Court cannot "predict with great confidence" how the ALJ's consideration of this specific limitation might affect the ALJ's assessment of plaintiff's restrictions and RFC determination as a whole. Nor does defendant specifically argue that any error in the ALJ's evaluation is harmless and such an argument is therefore forfeited. *James M. v. Kijakazi*, No. 20 CV 2082, 2023 WL 3652862, at *7 n.6 (N.D. Ill. May 25, 2023); *Arej v. Sessions*, 852 F.3d 665, 669 (7th Cir. 2017) ("The government has not raised harmless error here, so that argument is waived.") (Sykes, J. concurring).

Because the Court is remanding on this basis, it does not address plaintiff's other arguments. However, this should not be construed as a finding that the ALJ did or did not err in the other ways identified by plaintiff.

## Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment [15] is granted, the decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with the Court's ruling.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 10, 2025**